IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MARIEL E.S.[1], <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Civil No. 22-1368 (GLS) |

**OPINION AND ORDER**

Plaintiff seeks review of the Commissioner of the Social Security Administration's denial of her application for disability insurance benefits. Docket No. 3. Plaintiff sustains that the decision should be reversed because it was not supported by substantial evidence and was based on incorrect legal standards. Docket No. 23. The Commissioner opposed. Docket No. 26. The parties consented to the entry of judgment by a United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c). Docket No. 9. After careful consideration of the administrative record and the parties' briefs, the Commissioner's decision denying disability benefits is **AFFIRMED.**

**I.      Procedural Background**

Plaintiff worked as a poultry vaccinator in a poultry company in Puerto Rico from 2000-2015. Tr. 62, 84-85.[2] Plaintiff filed an application for disability insurance benefits claiming that, as of November 17, 2017, the following conditions limited her ability to work: depression, anxiety, diabetes, and epilepsy.[3] Tr. 759-60. The application was denied initially and upon reconsideration. Tr. 777-829. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") and, on April 22, 2021, a hearing was held via telephone before ALJ Victoria A. Ferrer. Tr. 48-73. Plaintiff

---

[1]      Plaintiff's last name is omitted for privacy reasons.

[2]      "Tr." refers to the transcript of the record of proceedings.

[3]      Plaintiff filed a prior application for disability benefits on May 1, 2015, which was denied on November 16, 2017. Tr. 21.

1

testified and was represented by counsel. Id. Vocational Expert Luisa Suez testified at the hearing. Id. The ALJ issued a decision finding that Plaintiff was not disabled, as defined in the Social Security Act, at any time from the onset date of November 17, 2017, through December 31, 2019, the last date insured. Tr. 34. Plaintiff asked the Appeals Council to review the final decision issued by the ALJ, but the request was denied on May 31, 2022 (Tr. 1-5), rendering the Commissioner's decision the final decision for review by this Court. On August 2, 2022, Plaintiff initiated this action and both parties filed memoranda in support of their respective positions. Docket Nos. 3, 23, 26.

## II. Legal Framework

### A. Disability Determination by the SSA: Five Step Process

To receive benefits under the Social Security Act, the ultimate question is whether plaintiff is disabled within the meaning of 42 U.S.C. §423(d). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. See id. The severity of the impairment must be such that the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial work which exists in the national economy." 42 U.S.C. §423(d)(2)(A). The burden of proving disability rests on plaintiff. 42 U.S.C. § 423(d)(5)(A); Bowen v. Yuckert, 482 U.S. 137, 146 (1987).

The Commissioner engages in a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §404.1520; Bowen, 482 U.S. at 140-42. At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity" and, if so, the claimant is not disabled. 20 C.F.R. §404.1520(b). If not engaged in substantial gainful activity, the Commissioner must determine whether the claimant has a medically severe impairment or combination of impairments that significantly limit claimant's physical or mental ability to do basic work activities. 20 C.F.R. §404.1520(c). The step two severity requirement imposes a *de minimis* burden, which is designed to screen out groundless claims. McDonald v. Secretary, 795 F.2d 1118, 1123 (1st Cir. 1986). If the impairment or combination of impairments is severe, the third step applies. The ALJ must determine whether the claimant's severe impairments meet the requirements of a "listed impairment", which the Commissioner acknowledges are so severe as to preclude substantial gainful activity. See 20 C.F.R. §404.1520(d); 20 C.F.R. Part 404, Subpart P,

App. 1. If the claimant has a "listed impairment" or an impairment equivalent in severity to a "listed impairment", the claimant is considered disabled. If the claimant's impairment does not meet the severity of a "listed impairment", the ALJ must determine the claimant's Residual Function Capacity ("RFC"). 20 C.F.R. §404.1520(e). An individual's RFC is his or her ability to do physical and mental work activities on a sustained basis despite limitations due to impairments. 20 C.F.R. §404.1520(e); §404.1545(a)(1). At step four, the ALJ must determine, taking into consideration the RFC, whether the claimant can perform past relevant work. 20 C.F.R. §404.1520(f); §416.920(f). If not, then the fifth and final step applies.

At steps one through four, the claimant has the burden of proving he cannot return to his former employment due to the alleged disability. Santiago v. Secretary, 944 F.2d 1, 5 (1st Cir. 1991). However, at step five, the Commissioner has the burden to prove the existence of other jobs in the national economy that claimant can perform. 20 C.F.R. §404.1520(g); Ortiz v. Secretary of Health & Human Services, 890 F.2d 520, 524 (1st Cir. 1989). If there are none, the claimant is entitled to disability benefits. 20 C.F.R. §404.1520(f).

### B. Standard of Review

The Court may affirm, modify, reverse, or remand the decision of the Commissioner based on the pleadings and transcript. 42 U.S.C. §405(g). The Court's role is limited to deciding whether the ALJ's decision is supported by substantial evidence in the record and based on a correct legal standard. See id.; Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001); Manso-Pizarro v. Secretary, 76 F.3d 15, 16 (1st Cir. 1996); Ortiz v. Secretary, 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner's findings of fact are conclusive when supported by substantial evidence but not when obtained by ignoring evidence, misapplying the law, or judging matters entrusted to experts. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). "Substantial evidence" is more than a "mere scintilla"; it is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018). Under the substantial evidence standard, "a court looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations" and "the threshold for such evidentiary sufficiency is not high". Biestek v. Berryhill, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019).

A determination of substantiality must be based on the record. Ortiz, 955 F.2d at 769. It is the Commissioner's responsibility to weigh credibility and to draw inferences from the evidence. Rodríguez v. Secretary, 647 F.2d 218, 222 (1st Cir. 1981). Courts will not second guess the

3

Commissioner's resolution of conflicting evidence. Irlanda Ortiz v. Secretary, 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner's findings must be upheld if a reasonable mind, viewing the evidence in the record, could accept them as adequate to support his conclusion. Rodríguez, 647 F.2d at 222. And even if there is substantial evidence, which could arguably justify a different conclusion, the Court must uphold the ALJ's decision if supported by substantial evidence. 20 C.F.R. §404.1546(c); Rodríguez Pagán v. Secretary, 819 F.2d 1, 3 (1st Cir.1987).

### III.     Discussion

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 16, 2019, the alleged onset of disability. Tr. 23. At step two, the ALJ determined that Plaintiff had severe impairments pursuant to 20 C.F.R. §404.1520(c): seizure disorder, major depressive disorder, and generalized anxiety disorder. Tr. 24. The ALJ further found that Plaintiff had an impairment that was not severe because it did not cause, individually or in combination with other impairments, more than minimal work-related difficulties for a continuous period of at least 12 months. Tr. 24. This non-severe impairment was Plaintiff's diabetes mellitus. Tr. 24, 1291-97, 1445-46. The non-severe impairment was evaluated in combination with Plaintiff's severe impairments in determining her RFC. Tr. 24.

The ALJ analyzed Plaintiff's mental impairments and concluded that Plaintiff's mental impairments were non-severe. Tr. 25-26. See 20 C.F.R. §404.1520a(b)(2); §404.1520a(c)(3); 20 C.F.R. Pt. 404, Subpart P. App. 1 § 12.00. In the first area of functioning, the ALJ found that Plaintiff had moderate limitations because of difficulty remembering, completing tasks, paying bills, taking medications without reminders, and driving. Tr. 25, 322, 992-97, 1204, 1213, 1307. In the second functional area, the ALJ noted that Plaintiff had moderate limitations because Plaintiff reported having symptoms of anxiety, isolation, poor impulse control, impulsivity, irritability, and aggressiveness, which affected getting along with others. Tr. 26, 31, 81, 992-93, 1226, 1232, 1235, 1237, 1255, 1249, 1305. In the third area of functioning, the ALJ concluded that Plaintiff had moderate limitations because Plaintiff reported needing reminders to take her medications, difficulty remembering, concentrating, and completing tasks. Tr. 26, 321-22, 994-97, 1306-07. Regarding the fourth area of functioning, the ALJ also found that Plaintiff had a moderate limitation in her ability to adapt or manage herself because Plaintiff reported that she did not go out by herself and could not drive due to her convulsions. Tr. 26, 79, 995.

At the conclusion of the step two analysis, the ALJ stated that the paragraph B analysis was applied in steps three and four:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis. Tr. 26-27.

At the third step, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met the severity of a "listed impairment" in 20 C.F.R. Part 404, Subpart P. App. 1, and proceeded to determine Plaintiff's RFC. Tr. 27-31. After considering the entire record and all of Plaintiff's symptoms, the ALJ concluded that Plaintiff had the RFC to perform a full range of work at all exertional levels but with non-exertional limitations:

> [S]he could not climb ladders or scaffolds or work with hazardous machines with external moving mechanical parts. The claimant could not work in high exposed places, or drive commercial motor vehicles or work with cutting objects. She was able to perform simple, routine and repetitive tasks of unskilled work and or understand, remember and carry out simple instructions. The claimant was able to adapt to routine changes in the unskilled work setting she was able to concentrate and persist two-hour segments. The claimant could make simple decisions on simple matters. She could not interact with the public and should have no team tasks with co-workers. Tr. 27.

In formulating the RFC, the ALJ considered Plaintiff's symptoms and the extent to which these were reasonably consistent with the objective medical evidence and other evidence on record, including medical opinions, studies, medications prescribed, and prior administrative medical findings, as required by 20 CFR §404.1529; §404.1520C and SSR 16-3P, 2017 WL 5180304 (S.S.A.). Tr. 27.

At step four, the ALJ noted that Plaintiff was able to perform her past relevant work as a poultry vaccinator, which is defined in the Dictionary of Occupational Titles ("DOT") as a medium

and unskilled work.[4] Tr. 32-33. Consequently, the ALJ concluded that Plaintiff was not disabled under the Social Security Act. Tr. 33-34.

### A.     Plaintiff's Challenges to the ALJ's Decision

Plaintiff argues that the ALJ erred at step two of the sequential process by failing to categorize her diabetes mellitus as severe, and by formulating an incomplete RFC. Plaintiff also argues that the ALJ erred by minimizing her aggressiveness in interacting with others and consequently excluding a limitation related to working with supervisors in the RFC determination. Docket No. 23. The Court disagrees.

#### 1.     Diabetes Mellitus

Plaintiff contends that the ALJ erred at step two of the sequential process by failing to categorize Plaintiff's diabetes mellitus as severe despite the reports of Dr. Sixto Pacheco-Escobar ("Dr. Pacheco-Escobar"). Docket No. 23 at pp. 9-10. The ALJ did not err when she deemed that Plaintiff's diabetes mellitus was non-severe. And the ALJ did account for Plaintiff's diabetes mellitus in formulating her RFC.

Claimants bear the burden of production at the first four steps of the sequential process. Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2022). While Plaintiff bears the burden of demonstrating that her diabetes mellitus is a severe impairment, the step two severity finding is a *di minimis* hurdle for a claimant. McDonald v. Sec'y of Health and Human Servs., 795 F.2d 1118, 1124 (1st Cir. 1986). A claimant's impairment is non-severe where medical evidence demonstrates that the impairment is a slight abnormality that has no more than a minimal effect on the claimant's ability to work. Rodríguez-Feliciano v. Comm'r of Soc. Sec., 2022 WL 3643949, at *3 (D.P.R. Aug. 24, 2022); 20 C.F.R. § 404.1522. In evaluating the severity of claimant's impairments, the Court may consider if there was a definite diagnosis of the impairment, if the doctor recommended any treatment, and whether medication was prescribed to remedy or control the impairment. Vázquez-Velázquez v. Comm'r of Soc. Sec., 2021 WL 9275723, at *3 (D.P.R. Sept. 23, 2021).

The ALJ determined that Plaintiff suffers three severe impairments (a seizure disorder, a major depressive disorder, and generalized anxiety disorder) and one non-severe impairment, diabetes mellitus. Tr. 24. Despite the non-severity of claimant's diabetes mellitus, the ALJ resolved step two in favor of Plaintiff and proceeded with the step three analysis. Tr. 25-32. If the ALJ finds

---

[4] In addition to her past relevant work, the ALJ noted that there were other jobs that existed in the national economy that Plaintiff could perform. The ALJ made alternate findings for the step five analysis. Tr. 32-34.

that at least one of claimant's impairments is severe, the step two inquiry is resolved in the claimant's favor. And the ALJ may proceed with step three. Hickman v. Comm'r of Soc. Sec., 399 F. App'x 300, 302 (9th Cir. 2010). Thus, the Court need not decide whether the ALJ erred in concluding that Plaintiff's diabetes mellitus is non-severe. See Rodríguez-Feliciano v. Comm'r of Soc. Sec., 2022 WL 3643949, at *3 (D.P.R. Aug. 24, 2022) (an error in classifying an impairment as severe or non-severe is harmless so long as the ALJ finds that there is at least one severe impairment and proceeds to step three); Vázquez-Velázquez v. Comm'r of Soc. Sec., 2021 WL 9275723, at *4 (D.P.R. Sept. 23, 2021) (same); Smith v. Saul, 2019 WL 5957294, at *3 (D.N.H. Nov. 13, 2019) (same). The evidence on the record nonetheless shows that the ALJ's decision to classify Plaintiff's diabetes as non-severe was supported by substantial evidence.

The ALJ considered the medical record and noted that Dr. Pacheco-Escobar diagnosed Plaintiff with diabetes mellitus type II. But that the condition remained stable with the prescribed medications. Tr. 24, Tr. 1291-97. On March 26, 2019, Dr. Pacheco-Escobar examined Plaintiff and reported a normal physical examination except for hypoesthesia. Tr. 1291-93. Despite her diagnosis of diabetes mellitus type II with polyneuropathy, Dr. Pacheco-Escobar described the effectiveness of medication as "good". Tr. 1293. He opined that Plaintiff had "limit[ed] work ability" but described Plaintiff's gait as "normal." Tr. 1293-1294. Dr. Pacheco-Escobar again examined Plaintiff on September 26, 2019, and noted that her respiratory, cardiovascular, and neurological systems were normal. Tr. 1445. Dr. Pacheco-Escobar reported that Plaintiff had no inflammations or limitation of movement. Tr. 1446. He nonetheless concluded that Plaintiff's medical condition affected her "ability to do work." Tr. 1446.

The ALJ also examined Dr. Nilma Rosado-Villanueva's report after evaluating Plaintiff on August 8, 2019. Tr. 24, 1309-23. Dr. Rosado-Villanueva reported that Plaintiff was diagnosed with diabetes mellitus at the age of eighteen (18), which was initially treated with Metformin and then with Lantus (insulin). Tr. 1309. Plaintiff made no reference to suffering from polyphagia, polydipsia, or polyuria. Id. Dr. Rosado-Villanueva noted that Plaintiff did not report any diabetic ulcer or amputations. Id. Plaintiff indicated that when she was diagnosed with diabetic neuropathy, she was prescribed Neurontin 600 mg, which she used as needed and obtained relief. Plaintiff did not report suffering side effects from taking Metformin or Lantus (insulin). Tr. 24, 1310. Dr. Rosado-Villanueva performed a physical examination of Plaintiff and noted that she could sit and stand with no evident difficulty. Tr. 1312.

The ALJ acknowledged that Plaintiff had diabetes mellitus but noted that Plaintiff did not recall having any emergency treatment due to high or low glucose level. Tr. 28. The ALJ considered Dr. Pacheco-Escobar findings, which documented normal physical examinations, including diabetic foot examinations, and evidenced a diagnosis of diabetes. Tr. 28, 96, 100, 104-05, 121, 125-26, 128, 144-49. However, the ALJ gave little weight to Dr. Pacheco-Escobar's opinion that Plaintiff was unable to work because she found the physician's opinion vague, and his medical notes stated that Plaintiff had shown a "good" response to the treatment. Tr. 31. Dr. Pacheco-Escobar did not point to any specific limitations resulting from Plaintiff's diabetes mellitus. The ALJ considered Dr. Rosado-Villanueva's examination which addressed Plaintiff's diabetes mellitus. Dr. Rosado-Villanueva found an almost normal physical examination, which led to the conclusion that Plaintiff could engage in a full range of work at all levels. Tr. 31.

The ALJ gave significant weight to the assessment of state agency non-examining physicians Drs. Brenda Concepción ("Dr. Concepción") and Lourdes Marrero ("Dr. Marrero"). Tr. 31. In her analysis of the medical evidence, Dr. Concepción acknowledged that Plaintiff reported having a tingling sensation in her hands but determined that she did not suffer from hands impairments or severe limitations due to diabetes mellitus. Tr. 774. Dr. Concepción noted that Plaintiff should avoid exposure to "industrial hazards, unprotected heights & climb, drive or use heavy equipment due to epilepsy." Tr. 770-774. The ALJ agreed with Dr. Concepción noting that the "medical evidence of record show[ed] the presence of seizure disorder, combined with [Plaintiff's] diabetes mellitus." Tr. 31. Dr. Marrero concurred with Dr. Concepción's opinion. Tr. 790-796.

The ALJ noted that there was no evidence of any medical complication due to Plaintiff's endocrinology condition. And that her physicians reported no limitations. Tr. 24. Plaintiff presented no evidence that her diabetes mellitus had created any other than mild limitations. Tr. 24. Moreover, at the hearing before the ALJ, when asked about her condition, Plaintiff responded that she took her medications as ordered and did not recall having any medical emergency due to high or low sugar levels. Tr. 54. The ALJ thus considered the symptoms and concluded that Plaintiff's diabetes mellitus was non-severe. The ALJ's conclusion was supported by the evidence on the record.

When formulating Plaintiff's RFC, the ALJ based her determination on all relevant evidence, including Plaintiff's medical record, medical opinions, and her description of her

8

limitations. See Vázquez-Vázquez, 2021 WL 9275723 at *5; 20 C.F.R. §§ 404.1545, 404.1546. The ALJ considered Plaintiff's non-severe diabetes mellitus.

Plaintiff urges this Court to follow Smith v. Saul, 2019 WL 5957294, at *4 (D.N.H. Nov. 13, 2019). Docket No. 23 at p. 11. In Smith, the district court found that the ALJ erred in not addressing the claimant's non-severe impairments when formulating the RFC. However, that is not the case here. The ALJ did consider Plaintiff's diabetes mellitus when analyzing her testimony before the agency and her medical record to establish her RFC. Tr. 28-29, 31. The ALJ evaluated the opinions of several doctors with respect to Plaintiff's diabetes and considered their examinations and conclusions: Dr. Rosado-Villanueva, Dr. Pacheco-Escobar, Dr. Concepción, and Dr. Marrero. Tr. 28-29, 31. See West v. Berryhill, 2017 WL 6499834, at *4 (1st Cir. Dec. 11, 2017) (unpublished) ("[T]he court considers the ALJ's decision as a whole when determining whether substantial evidence supported the ALJ's findings"). Hence, Plaintiff's allegation to the contrary is unfounded.

The ALJ's RFC analysis was complete and based on substantial evidence on the record. Even if the ALJ had erred at step two in categorizing Plaintiff's diabetes mellitus as non-severe, that would have been harmless. Although Plaintiff may not agree with the outcome, and even if the record could justify a different one, the Court must uphold the ALJ's decision as long as it is supported by substantial evidence. Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987). The ALJ's RFC stands because she considered Plaintiff's diabetes mellitus.

**2.  Mental RFC**

Plaintiff challenges the ALJ's RFC determination relating to her alleged social limitations. She claims that the ALJ did not adequately consider her "aggressiveness" in finding only a "moderate" limitation in interacting with others. Docket No. 23 at p. 12. And in excluding an RFC limitation related to working with supervisors. Id. at pp. 13-17. The Commissioner argues that Plaintiff has not shown that the ALJ erred in excluding a restriction related to supervisors. Docket No. 26 at pp. 9-14.

There are "four broad functional areas" (Paragraph B criteria), which an ALJ uses to rate the degree of a claimant's mental limitation: 1) understanding, remembering, or applying information; 2) interacting with others; 3) concentrating, persisting, or maintaining pace; and 4) adapting or managing oneself. 20 C.F.R. § 404.1520(a). In rating the degree of limitation in each of the four functional areas, the ALJ "will use the following five-point scale: none, mild, moderate,

marked, and extreme." 20 C.F.R. § 404.1520a(c)(4). The ALJ found that Plaintiff suffers a moderate limitation in social functioning. Tr. 26.

The ALJ noted that Plaintiff had no problems getting along with family, friends, neighbors, and others. Tr. 26, 81, 992. Indeed, the ALJ cited Plaintiff's Function Report where she responded "fine" when asked how she got along with authority figures. Tr. 26, 82, 993. Even though Plaintiff experienced symptoms of anxiety, isolation, poor impulse control, impulsivity, irritability, and aggressiveness, which affected her ability to interact with others, the ALJ noted that Plaintiff was described as cooperative. Tr. 26, 31, 1226, 1232, 1235, 1237, 1255, 1249, 1305. The ALJ considered Plaintiff's testimony that she was aggressive with people. Tr. 49-50. But, after considering Plaintiff's symptoms (Tr. 31), she found Plaintiff moderately limited in interacting with others.

Plaintiff contends that the ALJ's RFC finding was not supported by substantial evidence insofar as it limited interactions with co-workers and the public but remained silent as to interactions with supervisors. Docket No. 23 at pp. 13-17; Tr. 27. Plaintiff claims that, given her history of aggressiveness, the ALJ had to address her interactions with supervisors. Docket No. 23 at p. 13. And that a remand is warranted because the ALJ failed to address Plaintiff's interactions with supervisors. Id. at pp. 14-15. The ALJ discussed Plaintiff's social limitations when formulating the RFC. In making her determination, the ALJ gave "persuasive" weight to the opinions of state agency doctors Carmen Piñeiro ("Dr. Piñeiro") and Sydnia Rosado ("Dr. Rosado"), who issued Plaintiff's disability determination explanation at the initial and reconsideration level, respectively. Tr. 32. Both doctors reported that Plaintiff had moderate restrictions in all four functional areas (Paragraph B criteria). Tr. 32. Dr. Piñeiro reported that Plaintiff can understand and remember short and simple instructions, can maintain attention and concentration for at least a two-hour period, is  not significantly limited in her ability to interact with the public and ask simple questions and request assistance, and displayed "no evidence of disruptive or bizarre behavior." Tr. 774-76. Dr. Rosado concurred with Dr. Piñeiro's findings. Tr. 794-95. Despite the opinions of the state agency doctors, the ALJ found that "the record […] support[ed] limiting the claimant's interactions with the public due to her symptoms of anxiety, impulsivity, poor impulse control, and aggressiveness." Tr. 32.

Plaintiff claims that the ALJ failed to consider Dr. Guillermo Hoyos ("Dr. Hoyos") psychiatrist evaluation, which reported that her supervisor "picked on her." Docket No. 23 at pp.

10

15-16; Tr. 317. Docket No. 23 at p. 15; Tr. 317. Dr. Hoyos suggested that Plaintiff's depression and anxiety "seem[ed] to originate from previous work experiences with her supervisor and spousal abuse." Tr. 323. However, the record does not contain any other evidence regarding situations with her supervisors. Only that Plaintiff did not get along with one of her supervisors for a few months after working at the company for fourteen (14) years. Tr. 317. Dr. Hoyos' observations do not contradict the ALJ's RFC. See NLRB v. Beverly Enterprises-Mass., 174 F.3d 13, 26 (1st Cir. 1999) (the ALJ is not required to discuss all the evidence to show that she considered it).

     As discussed supra, the ALJ noted that Plaintiff informed getting along "fine" with persons in authority. Tr. 26, 82, 993. The ALJ considered Plaintiff's testimony at the hearing to the effect that her aggressiveness was mostly directed to her husband and daughter. Tr. 27, 50. The ALJ further discussed psychiatrist Viviana Pastrana-Bonilla's ("Dr. Pastrana-Bonilla") evaluation and noted that, although Plaintiff reported symptoms of anxiety, depression, and impulsivity, her aggressive episodes were directed towards her partner. Tr. 29, 1226, 1232, 1235, 1241. Dr. Pastrana-Bonilla did not report any significant mental limitations. Id. Thus, the Court finds that the ALJ did not err in rejecting the opinion Dr. Hoyos as there was substantial evidence to conclude that any aggressiveness by Plaintiff did not necessarily affect her relationship with authority. See Aponte v. Kijakazi, 2023 WL 6065859, at *5 (S.D.N.Y. Sept. 19, 2023) (rejecting claimant's argument that a physician's proposed limitation on social interaction had to be adopted by the ALJ despite no other evidence on the record supporting the social limitation). The ALJ considered Plaintiff's social limitations, but the record did not support an additional limitation in the RFC as to supervisors. See Gurgone v. Kijakazi, 2022 WL 17652477, at *10 (D. Mass.) (quoting Rodriguez v. Sec'y of Health & Hum. Servs., 647 F.2d 218, 222 (1st Cir. 1981) ([T]he ALJ properly considered 'the totality of the evidence' to craft [Plaintiff's] RFC, and this Court cannot overturn that determination if, as here, the 'evidence in the record as a whole' is adequate to support it.") (citations omitted). The Court will not disturb the ALJ's RFC determination.

## IV. Conclusion

The ALJ evaluated the record as a whole and her decision is supported by substantial evidence in the administrative record using correct legal standards. After thoroughly and carefully reviewing the record, and there being no good cause to reverse or remand, the final decision of the Commissioner is **AFFIRMED**, and this action is dismissed.

Judgment is to be entered accordingly.

**IT IS SO ORDERED.**
In San Juan, Puerto Rico, this 29th day of February 2024.

s/Giselle López-Soler
GISELLE LÓPEZ-SOLER
United States Magistrate Judge